09 CV 8257

LAW OFFICES OF GEORGE N. PROIOS, PLLC
Attorneys for Plaintiff
65 West 36th Street, 7th Floor
New York, NY 10018-7702

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ECF Case

RECEIVED
SEP 29 2009
U.S.D.C. S.D. N.Y.
CASHIERS

---

WORLD FUEL SERVICES (SINGAPORE) PTE. LTD.
trading as TRANS-TEC

09 CV

                                     Plaintiff,

                    v.

HIJAZI & GHOSHEH CO.,                             **VERIFIED COMPLAINT**
a member of Hijazi & Ghosheh Group,
(also known as: Hijazi & Ghosheh Company,
and Issam Hijazi & Ghosheh Co.)

                                     Defendant.

---

    Plaintiff WORLD FUEL SERVICES (SINGAPORE) PTE. LTD., trading as TRANS-

TEC (hereinafter "WORLD FUEL"), by its attorneys, LAW OFFICES OF GEORGE N.

PROIOS, PLLC, as and for its Verified Complaint against Defendant HIJAZI & GHOSHEH CO.

(hereinafter "HIJAZI"), a member of HIJAZI & GHOSHEH GROUP, also known as HIJAZI &

GHOSHEH COMPANY and ISSAM HIJAZI & GHOSHEH CO., alleges upon information and

belief as follows:

## JURISDICTION

    1.    The Court has subject matter jurisdiction by virtue that the underlying claim

herein is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules

of Civil Procedure and within the admiralty and maritime jurisdiction of this Court under 28

U.S.C. § 1333.

## THE PARTIES

2.     At all times material hereto, Plaintiff WORLD FUEL was and still is a foreign business entity organized and existing under the laws of Singapore.

3.     At all times material hereto, Defendant HIJAZI was and still is a foreign business entity registered and existing under the laws of Jordan.

## THE BASIC FACTS

4.     Plaintiff WORLD FUEL engages in supplying fuel (bunkers) to ocean-going vessels.

5.     Defendant HIJAZI owns and operates several ocean-going vessels, which it uses in its primary business of importing and exporting foodstuffs.

6.     On or about May 14, 2007, Plaintiff WORLD FUEL supplied bunkers to Defendant's vessel M/V MAYSORA in Freemantle.

7.     Plaintiff WORLD FUEL issued its invoice, in the amount of $75,456.62, to Defendant HIJAZI on May 18, 2007, with payment terms of 45 days, and a 2% per month pro rata late fee to be assessed on amounts due thereafter.  Payment in full was due on June 28, 2007. *A copy of all invoices complained of herein is attached hereto as Exhibit A.*

8.     Defendant HIJAZI remitted payment on or about August 17, 2007, thus accruing interest on the untimely payment in the amount of $2,514.32.

9.     Pursuant to Section 7(c) of Plaintiff WORLD FUEL's Terms and Conditions, payments may be applied to interest accrued on past due amounts first.  That was done and, as a result, there remains an unpaid principal balance of $2,514.32 on this invoice.  Further, an administrative fee of $3,772.83 accrued on the past due amount and remains unpaid.   The total

amount outstanding on this invoice is $6,287.15. *A copy of WORLD FUEL's Terms and Conditions is attached hereto as Exhibit B.*

10.    On or about March 8, 2006, Plaintiff WORLD FUEL supplied bunkers to Defendant's vessel M/V BADER in Freemantle.

11.    Plaintiff WORLD FUEL issued its invoice, in the amount of $150,379.41, to Defendant HIJAZI on March 22, 2006, with payment terms of 45 days, and a 2% per month pro rata late fee to be assessed on amounts due thereafter.  Payment in full was due on April 22, 2006.

12.    Defendant HIJAZI remitted a partial payment of $149,971.20 on or about June 9, 2006, with another partial payment of $408.21 remitted on or about August 3, 2006.  Interest, in the amount of $4,827.11, accrued on the untimely payments.

13.    Pursuant to Section 7(c) of Plaintiff WORLD FUEL's Terms and Conditions, payments may be applied to interest accrued on past due amounts first.  That was done and, as a result, there remains an unpaid principal balance of $4,827.11 on this invoice.  Further, an administrative fee of $7,518.97 accrued on the past due amount and remains unpaid. The total amount outstanding on this invoice is $12,346.08.

14.    On or about May 17, 2007, Plaintiff WORLD FUEL supplied bunkers to Defendant's vessel M/V BADER in Freemantle.

15.    Plaintiff WORLD FUEL issued its invoice, in the amount of $188,165.66, to Defendant HIJAZI on May 25, 2007, with payment terms of 45 days, and a 2% per month pro rata late fee to be assessed on amounts due thereafter.  Payment in full was due on July 1, 2007.

16.     Defendant HIJAZI remitted payment on or about August 17, 2007, thus accruing interest on the untimely payment in the amount of $5,895.86.

17.     Pursuant to Section 7(c) of Plaintiff WORLD FUEL's Terms and Conditions, payments may be applied to interest accrued on past due amounts first. That was done and, as a result, there remains an unpaid principal balance of $5,895.86 on this invoice. Further, an administrative fee of $9,408.28 accrued on the past due amount and remains unpaid. The total amount outstanding on this invoice is $15,304.14.

18.     On or about April 20, 2006, World Fuel Services Europe PTE. LTD[1] supplied bunkers to Defendant's vessel M/V MAYSORA in Tenerife.

19.     Plaintiff WORLD FUEL issued its invoice, in the amount of $832,220.00, to Defendant HIJAZI on April 30, 2006, with payment terms of 30 days, and a 2% per month pro rata late fee to be assessed on amounts due thereafter. Payment in full was due on May 20, 2006.

20.     Defendant HIJAZI remitted a partial payment of $200,000 on or about July 13, 2006, with another partial payment of $632,220 remitted on or about August 3, 2006. Interest on the untimely payments in the amount of $39, 208 accrued.

21.     Pursuant to Section 7(c) of Plaintiff WORLD FUEL's Terms and Conditions, payments may be applied to interest accrued on past due amounts first. That was done and, as a result, there remains an unpaid principal balance of $39,208 on this invoice. Further, an administrative fee of $41,611 accrued on the past due amount and remains unpaid. The total amount outstanding on this invoice is $80,819.

---

[1] World Fuel Services Europe, PTE. LTD. is a sister company to Plaintiff WORLD FUEL and supplied bunkers to the M/V MAYSORA in Tenerife on April 20, 2006. The invoices have been assigned to Plaintiff WORLD FUEL for purposes of collection. *A copy of the assignment is attached hereto as Exhibit C.*

22.    The aggregate amount owed to plaintiff WORLD FUEL by defendant HIJAZI for the subject invoices is $114,756.38. Additionally, plaintiff WORLD FUEL claims its contractual attorneys' fees and costs in the amount of $30,000. The total amount due from defendant HIJAZI is $144,756.38.

## COUNT I
## RULE B RELIEF

23.    Plaintiff WORLD FUEL repeats paragraphs 1 through 22 as if fully set forth herein.

24.    Plaintiff WORLD FUEL seeks issuance of process of maritime attachment so that it may obtain security for its claims, including its contractual attorneys' fees and costs. No security for Plaintiff's claims has been posted by Defendant or anyone acting on its behalf to date.

25.    Defendant HIJAZI cannot be found within this district within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Rule B"), but is believed to have, or will have during the pendency of this action, assets in this jurisdiction consisting of cash, funds, freight, hire, and/or credits in the hands of garnishees in this District, including but not limited to electronic fund transfers and/or Clearing House Interbank Payment System ("CHIPS") credits, because Defendant HIJAZI conducts business internationally in U.S. Dollars, and all electronic fund transfers are processed by intermediary banks in the United States, primarily in New York.

26.    Plaintiff WORLD FUEL belief that Defendant HIJAZI's property may be found in this District is based on the fact that Defendant HIJAZI has previously made payments to

Plaintiff WORLD FUEL in U.S. Dollars, as evidenced by a wire transfer made from Defendant HIJAZI to Plaintiff WORLD FUEL.

27.    Furthermore, Defendant HIJAZI is continuously engaged in international shipping and conducts business in U.S. Dollars. Nearly all companies engaged in the international shipping industry transact business in U.S. Dollars and therefore regularly have assets in New York City. Dollars are the *lingua franca* of international commerce.

28.    All international U.S. Dollar transfers are processed by intermediary banks in the United States, mainly in New York City. The Clearing House Interbank Payment System represents that it processes 95% of those transfers.

29.    Plaintiff WORLD FUEL believes that some of these assets of Defendant HIJAZI, to wit: accounts; bank accounts; monies; charter hire; credits; debts owed to Defendant HIJAZI; effects; payments for bunkers, cargo, goods or services; debts; unmatured debts; bills of lading; payments from the purchasers of cargoes; freight and/or hire payments to or from owners of vessels or charterers, to, from, or for the benefit of Defendant HIJAZI, and/or CHIPS credits or funds being transferred through intermediary banks, are located in this District in the possession of garnishees, including: Bank of New York; Bank of America; JP Morgan Chase; ABN Amro Bank; American Express Bank; Barclay's Bank; BNP Paribas; Citibank; Deutsche Bank and/or Deutsche Bank Trust Co, Americas; Dresdner Bank AG; HSBC Bank USA; Wachovia Bank, NA - New York; and UBS. Plaintiff intends to serve each of the identified garnishees with the Process of Maritime Attachment and Garnishment issued in this action.

30.    Plaintiff WORLD FUEL has been engaged in settlement negotiations with Defendant HIJAZI, and will continue to do so through the pendency of this action. If settlement is not reached, plaintiff WORLD FUEL shall seek to transfer all funds attached and restrained

through this action into a separate escrow account, where it shall be held as security against plaintiff WORLD FUEL's claims during further litigation of those claims.

**WHEREFORE**, Plaintiff WORLD FUEL prays:

A.     That process in due form of law issue against Defendant HIJAZI, citing it to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

B.     That since Defendant HIJAZI cannot be found within this District, and pursuant to Rule B, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B attaching all of their tangible or intangible property or any other funds held by any garnishee, which are due and owing to these defendants up to the amount of at least USD $144,756.38 to Plaintiff WORLD FUEL, to secure and satisfy Plaintiff WORLD FUEL's claim, and that all persons claiming any interest in the same be cited to appear and, pursuant to Rule B, answer the matters alleged in the Verified Complaint;

C.     That since it appears that the U.S. Marshal's Service lacks sufficient staff to effect service of Process of Maritime Attachment and Garnishment promptly or economically, and that since appointing a person over 18 years of age and who is not a party to this action will result in substantial economies in time and expense, such a person be appointed pursuant to Fed.R.Civ.P. 4(c) to serve process of Maritime Attachment and Garnishment in this action.

D.     That this Court retain jurisdiction over this matter through the entry of a judgment or award associated with the pending claims including appeals thereof.

E.       That Plaintiff WORLD FUEL may have such other, further and different relief as

may be just and proper.


Dated: New York, NY
        September 29, 2009

                                        Respectfully submitted,
                                        LAW OFFICES OF GEORGE N. PROIOS, PLLC
                                        Attorneys for Plaintiff


                                        By  _____
                                            George N. Proios (GP-9331)
                                            65 West 36th Street
                                            New York, NY 10018-7702
                                            212-279-8880



OF COUNSEL:
J. Stephen Simms
Simms Showers LLP
20 S. Charles Street - Suite 702
Baltimore, Maryland 21201
410-783-5795

**WORLD FUEL SERVICES EUROPE, LTD.**
**TRADING AS TRANS-TEC**
Statement of Account
As of June 15, 2009

HIJAZI & GOSHEH CO.

| INVOICE NUMBER | VESSEL SUPPLIED / PORT OF SUPPLY | DELIVERY DATE | DUE DATE | INVOICE AMOUNT | DATE PAYMENT RECEIVED | DAYS PAST DUE | PAYMENT AMOUNT | CARRY OVER CHARGES | ADMINISTRATIVE FEES | TOTAL AMOUNT OUTSTANDING |
|---|---|---|---|---|---|---|---|---|---|---|
| 130288-596 | M/V MAYSORA/Tenerife | 20-Apr-06 | 20-May-06 | $ 832,220.00 | 13-Jul-06 | 54 | $ (200,000.00) | - | $ | $ 41,611.00 |
| Partial Payment Received | | | | | 3-Aug-06 | 21 | $ (632,220.00) | - | $ 41,611.00 | |
| 133084-596 | M/V MAYSORA/Tenerife | 7-Aug-06 | 6-Sep-06 | $ 39,208.00 | | 1013 | $ - | - | $ - | $ 39,208.00 |
| TOTAL OUTSTANDING: | | | | $ 871,428.00 | | | $ (832,220.00) | | $ 41,611.00 | $ 80,819.00 |

Note: Pursuant to the applicable Terms and Conditions a 5% Administrative Fee is charged on all invoices more than 15-days past due.

EXHIBIT A

**WORLD FUEL SERVICES EUROPE, LTD.**
**TRADING AS TRANS-TEC**
Statement of Account
As of June 15, 2009

HIJAZI & GOSHEH CO.

| INVOICE NUMBER | VESSEL SUPPLIED / PORT OF SUPPLY | DELIVERY DATE | DUE DATE | INVOICE AMOUNT | DATE PAYMENT RECEIVED | DAYS PAST DUE | PAYMENT AMOUNT | CARRY OVER CHARGES | ADMINISTRATIVE FEES | TOTAL AMOUNT OUTSTANDING |
|---|---|---|---|---|---|---|---|---|---|---|
| 130288-596 | M/V MAYSORA/Tenerife | 20-Apr-06 | 20-May-06 | $ 832,220.00 | 13-Jul-06 | 54 | $ (200,000.00) | $ - | $ 41,611.00 | $ 41,611.00 |
| | Partial Payment Received | | | | 3-Aug-06 | 21 | $ (632,220.00) | $ - | | |
| 133084-596 | M/V MAYSORA/Tenerife | 7-Aug-06 | 6-Sep-06 | $ 39,208.00 | | 1013 | $ - | $ - | $ - | $ 39,208.00 |
| | TOTAL OUTSTANDING: | | | $ 871,428.00 | | | $ (832,220.00) | $ - | $ 41,611.00 | $ 80,819.00 |

Note: Pursuant to the
applicable Terms and
Conditions a 5%
Administrative Fee is charged
on all invoices more than 15-
days past due.

# INVOICE

**TRANS-TEC**
PORTLAND HOUSE, 13TH FLOOR, BRESSENDEN PLACE
LONDON SW1E 5BH, UK
SPAIN VAT REG # N0067374I

| Pg No. | INVOICE NO. | APPLY TO | INVOICE DATE | CUST NO. |
|---|---|---|---|---|
| 1 | 130288-596 | | 30-APR-06 | 51342 |

Tel: 020-7808-5000 Fax: 020-7808-5088
Internet: www.wfscorp.com

SOLD TO:

M/V MAYSORA AND/OR
HER OWNERS/OPERATORS AND
HIJAZI & GHOSHEH CO.
P.O. BOX 18392
MARKA/ AL MARAAI ROAD
AMMAN  11118
JORDAN

**WIRE TRANSFER FUNDS TO:**
LASALLE BANK, CHICAGO, IL
SWIFT: LASLUS44  ABA: 071000505
ACCT: TRANS-TEC
ACCT #: 5800678517
ALL BANK CHARGES ARE FOR SENDER'S ACCT

| LIFT DATE | WORKSHEET NO. | VESSEL | PORT | TERMS 30 DDD BY TT |
|---|---|---|---|---|
| 20-APR-06 | 2207294 | MAYSORA | TENERIFE | DUE: 20-MAY-06 |
| CONTRACT NO. | | ORDER NO. | ITEM NO. | COUNTRY SPAIN |

| Product | Quantity Shipped | Unit Price | Extension |
|---|---|---|---|
| 180CST MTONS | 1,400.00000 | 394.00000 | 551,600.00 |
| MGO MTONS | 400.00000 | 695.00000 | 278,000.00 |
| AGENCY FEE | | | 2,620.00 |

Registered office: Millenium Bridge House, 2 Lambeth Hill, London. EC4V 4AJ, U.K.
Reg. in England No.4846814, VAT NUMBER GB 835 9721 95
A CHARGE OF 2% PER MONTH PRO RATA WILL BE APPLIED ON AMOUNTS PAST DUE.
WE WILL ASSUME THIS INVOICE TO BE CORRECT UNLESS WE
RECEIVE WRITTEN NOTICE FROM YOU WITHIN 14 DAYS FROM THE INVOICE DATE.
A DBA/DIVISION/BRANCH OF World Fuel Services Europe Ltd.

| Exchange Rate: 0.8118 EUR/USD | Total Invoice: EUR 675,554.59 | TOTAL DUE USD $832,220.00 |
|---|---|---|
| Total Net: EUR 675,554.59 | SPAIN VAT TAX 16%: EUR 0.00 | PLEASE REMIT THIS AMOUNT |

**TRANS-TEC**
A DBA/Division of WORLD FUEL SERVICES EUROPE LTD
PORTLAND HOUSE, 13TH FLOOR, BRESSENDEN PLACE,
LONDON SW1E 5BH, UK
VAT# N006737741

HIJAZI & GHOSHEH CO.
P.O. BOX 18392
MARKA/ AL MARAAI ROAD
AMMAN 11118
JORDAN

### INVOICE / FACTURA

| CUSTOMER NO./ NO. DE CLIENTE | INVOICE NO./ NO. DE FACTURA | INVOICE DATE/ FECHA DE FACTURA | PAGE NO./ NO. DE PAGINA |
|---|---|---|---|
| 51342 | 133094-596 | 07-AUG-06 | 1 - 1 |

Tel: 020-7808-5000 Fax: 020-7808-5088
Internet: http://www.wfscorp.com
WIRE TRANSFER FUNDS TO/TRANSFERIR MONTO VIA CABLE A:
La Salle Bank N.A. Chicago, IL
ABA: 071000505
SWIFT: LASLUS44
ACCT: TRANS-TEC
ACCT# 5800678517
ALL BANK CHARGES ARE FOR SENDERS ACCOUNT

| LIFT DATE/ FECHA DE ENTREGA | BDR NO./ BDR NO. | ORDER NO./ NO. DE ORDEN | CONTRACT NO./ NO. DE CONTRATO | POI NO./ NO. POI | TERMS/ TERMINOS |
|---|---|---|---|---|---|
| 07-AUG-06 | N/A | N/A | N/A | 2207294 | 30 DDD BY TT |

| VESSEL/ NAVE | PORT/ PUERTO | COUNTRY/ PAIS | DESTINATION/ DESTINO | ITEM NO./ NO. DE ITEM | DUE DATE/ FECHA DE VENCIMIENTO |
|---|---|---|---|---|---|
| MAYSORA | TENERIFE | SPAIN | N/A | NA | 08-SEP-06 |

| DESCRIPTION/ DESCRIPCION | QUANTITY/ CANTIDAD | UNIT PRICE/ PRECIO UNITARIO | EXTENDED AMOUNT/ SUBTOTAL EUR | EXTENDED AMOUNT/ SUBTOTAL USD | SALES TAX AMOUNT/ IMPUESTOS EUR | SALES TAX AMOUNT/ IMPUESTOS USD | INVOICE AMOUNT/ TOTAL FACTURADO EUR | INVOICE AMOUNT/ TOTAL FACTURADO USD |
|---|---|---|---|---|---|---|---|---|
| Received: USD 660,577.27 on 03-AUG-06 We charged your account for 75 days @ 2.00% (20-MAY-06 to 03-AUG-06) per month pro rata | 1.00 | 33,028.8600 USD | 25,739.39 | 33,028.86 | 0.00 | 0.00 | 25,739.39 | 33,028.86 |
| Received: USD 171,642.73 on 13-JUL-06 We charged your account for 54 days @ 2.00% (20-MAY-06 to 13-JUL-06) per month pro rata | 1.00 | 6,179.1400 USD | 4,815.40 | 6,179.14 | 0.00 | 0.00 | 4,815.40 | 6,179.14 |
| | | | 30,554.79 | 39,208.00 | 0.00 | 0.00 | 30,554.79 | 39,208.00 |

INVOICE SUMMARY/RESUMEN DE LA FACTURA:
AMOUNT NOT SUBJECT TO SALES TAX/CANTIDAD NO SUJETA A IMPUESTOS    39,208.00
AMOUNT SUBJECT TO SALES TAX/CANTIDAD SUJETA A IMPUESTOS    0.00
TOTAL EXCLUSIVE OF SALES TAX/TOTAL EXCLUYENDO IMPUESTOS    39,208.00
TOTAL SALES TAX/TOTAL DE IMPUESTO    0.00
INVOICE TOTAL/TOTAL FACTURADO    39,208.00

This transaction is subject to the terms and conditions of sale set forth at http://www.wfscorp.com/wfscorp/docs/glc-marine.pdf
WE WILL ASSUME THIS INVOICE TO BE CORRECT UNLESS WE RECEIVE WRITTEN NOTICE WITHIN 14 DAYS FROM THE INVOICE DATE.
A CHARGE OF 2% PER MONTH PRO RATA WILL BE APPLIED ON AMOUNTS PAST DUE.

Exempt from VAT according to Article 15, 4 of the Sixth EU Directive

| EXCHANGE RATE/ TIPO DE CAMBIO | COUNTRY SEQUENCE NO./ NO. DE SEQUENCIA | CUSTOMER REFERENCE NO./ NUMERO DE REFERENCIA | PLEASE REMIT THIS AMOUNT/ POR FAVOR REMITA ESTE MONTO |
|---|---|---|---|
| 0.7793 EUR/USD | | N/A | USD    39,208.00 |

| MAIL INSTRUCTIONS/ MODO DE ENVIO |
|---|
| REGULAR MAIL |

**WORLD FUEL SERVICES (SINGAPORE) PTE. LTD.**
**TRADING AS TRANS-TEC**
**Statement of Account**
As of June 15, 2009

HIJAZI & GOSHEH CO.

| INVOICE NUMBER | VESSEL SUPPLIED / PORT OF SUPPLY | DELIVERY DATE | DUE DATE | INVOICE AMOUNT | DATE PAYMENT RECEIVED | DAYS PAST DUE | PAYMENT AMOUNT | CARRY OVER CHARGES | ADMINISTRATIVE FEES | TOTAL AMOUNT OUTSTANDING |
|---|---|---|---|---|---|---|---|---|---|---|
| 170537-531 | M/V MAYSORA/Freemantle | 17-May-07 | 28-Jun-07 | $ 75,456.62 | 17-Aug-07 | 50 | $ (75,456.62) | $ - | $ 3,772.83 | $ 3,772.83 |
| 174714-531 | M/V MAYSORA/Freemantle | 20-Aug-07 | 4-Oct-07 | $ 2,514.32 | | 620 | $ - | $ - | $ - | $ 2,514.32 |
| 151717-531 | M/V BADER III/Freemantle Partial Payment Received | 8-Mar-06 | 22-Apr-06 | $ 150,379.41 | 9-Jun-06 / 3-Aug-06 | 48 / 55 | $ (149,971.20) / $ (408.21) | $ - / $ - | $ 7,518.97 / $ - | $ 7,518.97 |
| 157170-531 | M/V BADER III/Freemantle | 7-Aug-06 | 21-Sep-06 | $ 4,827.11 | | 998 | $ - | $ - | $ - | $ 4,827.11 |
| 170806-531 | M/V BADER III/Freemantle | 17-May-07 | 1-Jul-07 | $ 188,165.66 | 17-Aug-07 | 47 | $ (188,165.66) | $ - | $ 9,408.28 | $ 9,408.28 |
| 174715-531 | M/V BADER III/Freemantle | 20-Aug-07 | 4-Oct-07 | $ 5,895.86 | | 620 | $ - | $ - | $ - | $ 5,895.86 |
| TOTAL OUTSTANDING: | | | | $ 427,238.98 | | | $ (414,001.69) | $ - | $ 20,700.08 | $ 33,937.37 |

Note: Pursuant to the applicable Terms and Conditions a 5% Administrative Fee is charged on all invoices more than 15- days past due.

**WORLD FUEL SERVICES (SINGAPORE) PTE. LTD.**
**TRADING AS TRANS-TEC**
**Statement of Account**
**As of June 15, 2009**

HIJAZI & GOSHEH CO.

| INVOICE NUMBER | VESSEL SUPPLIED / PORT OF SUPPLY | DELIVERY DATE | DUE DATE | INVOICE AMOUNT | DATE PAYMENT RECEIVED | DAYS PAST DUE | PAYMENT AMOUNT | CARRY OVER CHARGES | ADMINISTRATIVE FEES | TOTAL AMOUNT OUTSTANDING |
|---|---|---|---|---|---|---|---|---|---|---|
| 170537-531 | M/V MAYSORA/Freemantle | 17-May-07 | 28-Jun-07 | $ 75,456.62 | 17-Aug-07 | 50 | $ (75,456.62) | $ - | $ 3,772.83 | $ 3,772.83 |
| 174714-531 | M/V MAYSORA/Freemantle | 20-Aug-07 | 4-Oct-07 | $ 2,514.32 | | 620 | $ - | $ - | $ - | $ 2,514.32 |
| 151717-531 | M/V BADER III/Freemantle | 8-Mar-06 | 22-Apr-06 | $ 150,379.41 | 9-Jun-06 | 48 | $ (149,971.20) | $ - | $ 7,518.97 | $ 7,518.97 |
| | Partial Payment Received | | | | 3-Aug-06 | 55 | $ (408.21) | $ - | $ - | |
| 157170-531 | M/V BADER III/Freemantle | 7-Aug-06 | 21-Sep-06 | $ 4,827.11 | | 998 | $ - | $ - | $ - | $ 4,827.11 |
| 170806-531 | M/V BADER III/Freemantle | 17-May-07 | 1-Jul-07 | $ 188,165.66 | 17-Aug-07 | 47 | $ (188,165.66) | $ - | $ 9,408.28 | $ 9,408.28 |
| 174715-531 | M/V BADER III/Freemantle | 20-Aug-07 | 4-Oct-07 | $ 5,895.86 | | 620 | $ - | $ - | $ - | $ 5,895.86 |
| | **TOTAL OUTSTANDING:** | | | $ 427,238.98 | | | $ (414,001.69) | $ - | $ 20,700.08 | $ 33,937.37 |

Note: Pursuant to the
applicable Terms and
Conditions a 5%
Administrative Fee is charged
on all invoices more than 15-
days past due.

# TAX INVOICE

**TRANS-TEC**
238A THOMSON ROAD # 17 - 03 NOVENA SQUARE TOWER A
SINGAPORE 307684 GST No: 92 885 230 620

| Pg No. | INVOICE NO. | APPLY TO | INVOICE DATE | CUST NO. |
|---|---|---|---|---|
| 1 | 170537-531 | | 18-MAY-07 | 51342 |

Tel: 65-6215-6999 Fax: 65-6215-6902
Internet: www.wfscorp.com

**SOLD TO:**
M/V MAYSORA AND/OR
HER OWNERS/OPERATORS AND
HIJAZI & GHOSHEH CO.
P.O. BOX 18392
MARKA/ AL MARAAI ROAD
AMMAN  11118
JORDAN

**WIRE TRANSFER FUNDS TO:**
LASALLE BANK, CHICAGO, IL
SWIFT: LASLUS44  ABA: 071000505
ACCT: TRANS-TEC
ACCT #: 5800678517
ALL BANK CHARGES ARE FOR SENDER'S ACCT

| LIFT DATE | WORKSHEET NO. | VESSEL | PORT | | TERMS |
|---|---|---|---|---|---|
| 14-MAY-07 | 2269760 | MAYSORA | FREMANTLE, AUSTRALIA | DUE: | 45 DDD BY TT 28-JUN-07 |
| CONTRACT NO. | | ORDER NO. | ITEM NO. | | COUNTRY AUSTRALIA |

| Product | Quantity Shipped | Unit Price | Extension |
|---|---|---|---|
| MGO  MTONS | 100.20800 | 753.00000 | 75,456.62 |

A CHARGE OF 2% PER MONTH PRO RATA WILL BE APPLIED ON AMOUNTS PAST DUE.
WE WILL ASSUME THIS INVOICE TO BE CORRECT UNLESS WE
RECEIVE WRITTEN NOTICE FROM YOU WITHIN 14 DAYS FROM THE INVOICE DATE.
ANY BILLING QUERIES, PLEASE CONTACT US AT TEL: 65-6215 6910 FAX: 65-6215 6904
A DBA/DIVISION OF World Fuel Services (Singapore) Pte Ltd.
Registration Number: 199501485M

| Exchange Rate: 1.2019 AUS/USD | Total Invoice: AUD 90,692.82 | TOTAL DUE USD $75,456.62 |
|---|---|---|
| Total Net: AUD 90,692.82 | GST (10%): 0.00 | PLEASE REMIT THIS AMOUNT |

**TRANS-TEC**

A DBA/Division of WORLD FUEL SERVICES (SINGAPORE) PTE LTD
238A THOMSON ROAD # 17 - 03 NOVENA SQUARE TOWER A
SINGAPORE 307684 GST No: M2-8920852-6
GST# 92 885 230 620

HIJAZI & GHOSHEH CO.
P.O. BOX 18392
MARKA/ AL MARAAI ROAD
AMMAN 11118
JORDAN

## TAX INVOICE

| CUSTOMER NO. | INVOICE NO. | INVOICE DATE | PAGE NO. |
|---|---|---|---|
| 51342 | 174714-531 | 20-AUG-07 | 1 - 1 |

Tel: 65-6215-6999 Fax: 65-6215-6902
Internet: http://www.wfscorp.com
**WIRE TRANSFER FUNDS TO:**
La Salle Bank N.A. Chicago, IL
ABA: 071000505
SWIFT: LASLUS44
ACCT: TRANS-TEC
ACCT# 5800259169
ALL BANK CHARGES ARE FOR SENDER'S ACCOUNT

| LIFT DATE | BDR NO. | ORDER NO. | CONTRACT NO. | PO1 NO. | TERMS |
|---|---|---|---|---|---|
| 20-AUG-07 | N/A | N/A | N/A | 2269760 | 45 DDD BY TT |
| VESSEL | PORT | COUNTRY | DESTINATION | ITEM NO. | DUE DATE |
| MAYSORA | FREMANTLE, AUSTRALIA | AUSTRALIA | N/A | N/A | 04-OCT-07 |

| DESCRIPTION | QUANTITY | UNIT PRICE | EXTENDED AMOUNT | | SALES TAX AMOUNT | | INVOICE AMOUNT | |
|---|---|---|---|---|---|---|---|---|
| | | | AUD | USD | AUD | USD | AUD | USD |
| Received: USD 75,429.62 on 17-AUG-07 | 1 USG | 2,514.32000 USD/USG | 3,116.75 | 2,514.32 | 0.00 | 0.00 | 3,116.75 | 2,514.32 |
| We charged your account for 50 days @ 2.00% | | | | | | | | |
| (28-JUN-07 to 17-AUG-07) per month pro rata | | | | | | | | |
| | | | 3,116.75 | 2,514.32 | 0.00 | 0.00 | 3,116.75 | 2,514.32 |

INVOICE SUMMARY:
AMOUNT NOT SUBJECT TO SALES TAX                    3,116.75    2,514.32
AMOUNT SUBJECT TO SALES TAX                          0.00        0.00
TOTAL EXCLUSIVE OF SALES TAX                       3,116.75    2,514.32
TOTAL SALES TAX                                      0.00        0.00
INVOICE TOTAL                                      3,116.75    2,514.32

This transaction is subject to the terms and conditions of sale set forth at http://www.wfscorp.com/wfscorp/docs/gt-marine.pdf
WE WILL ASSUME THIS INVOICE TO BE CORRECT UNLESS WE RECEIVE WRITTEN NOTICE FROM YOU WITHIN 14 DAYS FROM THE INVOICE DATE.
A CHARGE OF 2% PER MONTH PRO RATA WILL BE APPLIED ON AMOUNTS PAST DUE.

| MAIL INSTRUCTIONS | EXCHANGE RATE | COUNTRY SEQUENCE NO. | CUSTOMER REFERENCE NO. | PLEASE REMIT THIS AMOUNT | |
|---|---|---|---|---|---|
| REGULAR MAIL | 1.2396 AUD/USD | | N/A | USD | 2,514.32 |

**TRANS-TEC**

238A THOMSON ROAD # 17 - 03 NOVENA SQUARE TOWER A
SINGAPORE 307684 GST No: 92 885 230 620

TAX INVOICE

| Pg No. | INVOICE NO. | APPLY TO | INVOICE DATE | CUST NO. |
|---|---|---|---|---|
| 1 | 151717-531 | | 22-MAR-06 | 51342 |

Tel: 65-6215-6999 Fax: 65-6215-6902
Internet: www.wfscorp.com

SOLD TO:
M/V BADER III AND/OR
HER OWNERS/OPERATORS AND
HIJAZI & GHOSHEH CO.
P.O. BOX 18392
MARKA/ AL MARAAI ROAD
AMMAN  11118
JORDAN

**WIRE TRANSFER FUNDS TO:**
LASALLE BANK, CHICAGO, IL
SWIFT: LASLUS44  ABA: 071000505
ACCT: TRANS-TEC
ACCT #: 5800678517
ALL BANK CHARGES ARE FOR SENDER'S ACCT

| LIFT DATE | WORKSHEET NO. | VESSEL | PORT | TERMS |
|---|---|---|---|---|
| 08-MAR-06 | 2197300 | BADER III | FREMANTLE, AUSTRALIA | 45 DDD BY TT  DUE: 22-APR-06 |
| CONTRACT NO. | | ORDER NO. | ITEM NO. | COUNTRY  AUSTRALIA |

| Product | Quantity Shipped | Unit Price | Extension |
|---|---|---|---|
| MGO MTONS | 200.23300 | 749.00000 | 149,974.52 |
| OVERTIME FEE | | | 404.89 |

A CHARGE OF 2% PER MONTH PRO RATA WILL BE APPLIED ON AMOUNTS PAST DUE.
WE WILL ASSUME THIS INVOICE TO BE CORRECT UNLESS WE
RECEIVE WRITTEN NOTICE FROM YOU WITHIN 14 DAYS FROM THE INVOICE DATE.
ANY BILLING QUERIES, PLEASE CONTACT US AT TEL: 65-6215 6910 FAX: 65-6215 6904
A DBA/DIVISION OF World Fuel Services (Singapore) Pte Ltd.
Registration Number: 199501485M

TOTAL DUE
USD $150,379.41

PLEASE REMIT THIS AMOUNT

**TRANS-TEC**

A DBA/Division of WORLD FUEL SERVICES (SINGAPORE) PTE LTD
238A THOMSON ROAD # 17 - 03 NOVENA SQUARE TOWER A
SINGAPORE 307684 GST No: M2-8920852-6
GST# 92 885 230 620

HIJAZI & GHOSHEH CO.
P.O. BOX 18392
MARKA/ AL MARAAI ROAD
AMMAN 11118
JORDAN

## TAX INVOICE

| CUSTOMER NO. | INVOICE NO. | INVOICE DATE | PAGE NO. |
|---|---|---|---|
| 51342 | 157170-531 | 07-AUG-06 | 1 - 1 |

Tel: 65-6215-6999 Fax: 65-6215-6902
Internet: http://www.wfscorp.com
**WIRE TRANSFER FUNDS TO:**

La Salle Bank N.A. Chicago, IL
ABA: 071000505
SWIFT: LASLUS44
ACCT: TRANS-TEC
ACCT# 5800259169
ALL BANK CHARGES ARE FOR SENDER'S ACCOUNT

| LIFT DATE | BDR NO. | ORDER NO. | CONTRACT NO. | POI NO. | TERMS |
|---|---|---|---|---|---|
| 07-AUG-06 | N/A | N/A | NA | 2197300 | 45 DDD BY TT |
| VESSEL | PORT | COUNTRY | DESTINATION | ITEM NO. | DUE DATE |
| BADER III | FREMANTLE, AUSTRALIA | AUSTRALIA | N/A | NA | 21-SEP-06 |

| DESCRIPTION | QUANTITY | UNIT PRICE | EXTENDED AMOUNT | | SALES TAX AMOUNT | | INVOICE AMOUNT | |
|---|---|---|---|---|---|---|---|---|
| | | | AUD | USD | AUD | USD | AUD | USD |
| Received: USD 149,971.20 on 09-JUN-06 | 1.00 | 4,799.08000 USD | 4,799.08 | 4,799.08 | 0.00 | 0.00 | 4,799.08 | 4,799.08 |
| We charged your account for 48 days @ 2.00% (22-APR-06 to 09-JUN-06) per month pro rata | | | | | | | | |
| Received: USD 408.21 on 03-AUG-06 | 1.00 | 28.03000 USD | 28.03 | 28.03 | 0.00 | 0.00 | 28.03 | 28.03 |
| We charged your account for 103 days @ 2.00% (22-APR-06 to 03-AUG-06) per month pro rata | | | | | | | | |
| | | | 4,827.11 | 4,827.11 | 0.00 | 0.00 | 4,827.11 | 4,827.11 |

INVOICE SUMMARY:
AMOUNT NOT SUBJECT TO SALES TAX    4,827.11
AMOUNT SUBJECT TO SALES TAX    0.00
TOTAL EXCLUSIVE OF SALES TAX    4,827.11
TOTAL SALES TAX    0.00
INVOICE TOTAL    4,827.11

This transaction is subject to the terms and conditions of sale set forth in http://www.wfscorp.com/wfscorp/docs/gtc-marine.pdf
WE WILL ASSUME THIS INVOICE TO BE CORRECT UNLESS WE RECEIVE WRITTEN NOTICE FROM YOU WITHIN 14 DAYS FROM THE INVOICE DATE.
A CHARGE OF 2% PER MONTH PRO RATA WILL BE APPLIED ON AMOUNTS PAST DUE.

| MAIL INSTRUCTIONS | EXCHANGE RATE | COUNTRY SEQUENCE NO. | CUSTOMER REFERENCE NO. | PLEASE REMIT THIS AMOUNT |
|---|---|---|---|---|
| REGULAR MAIL | 1.0000 AUD/USD | | N/A | USD    4,827.11 |

**TRANS-TEC**
238A THOMSON ROAD # 17 - 03 NOVENA SQUARE TOWER A
SINGAPORE 307684 GST No: 92 885 230 620

TAX INVOICE

| Pg No. | INVOICE NO. | APPLY TO | INVOICE DATE | CUST NO. |
|---|---|---|---|---|
| 1 | 170806-531 | | 25-MAY-07 | 51342 |

Tel: 65-6215-6999 Fax: 65-6215-6902
Internet: www.wfscorp.com

SOLD TO:

M/V BADER III AND/OR
HER OWNERS/OPERATORS AND
HIJAZI & GHOSHEH CO.
P.O. BOX 18392
MARKA/ AL MARAAI ROAD
AMMAN  11118
JORDAN

**WIRE TRANSFER FUNDS TO:**
LASALLE BANK, CHICAGO, IL
SWIFT: LASLUS44  ABA: 071000505
ACCT: TRANS-TEC
ACCT #: 5800678517
ALL BANK CHARGES ARE FOR SENDER'S ACCT

| LIFT DATE | WORKSHEET NO. | VESSEL | PORT | TERMS |
|---|---|---|---|---|
| 17-MAY-07 | 2269763 | BADER III | FREMANTLE, AUSTRALIA | 45 DDD BY TT  DUE: 01-JUL-07 |
| CONTRACT NO. | | ORDER NO. | ITEM NO. | COUNTRY |
| | | | | AUSTRALIA |

| Product | Quantity Shipped | Unit Price | Extension |
|---|---|---|---|
| MGO MTONS | 249.88800 | 753.00000 | 188,165.66 |

A CHARGE OF 2% PER MONTH PRO RATA WILL BE APPLIED ON AMOUNTS PAST DUE.
WE WILL ASSUME THIS INVOICE TO BE CORRECT UNLESS WE
RECEIVE WRITTEN NOTICE FROM YOU WITHIN 14 DAYS FROM THE INVOICE DATE.
ANY BILLING QUERIES, PLEASE CONTACT US AT TEL: 65-6215 6910 FAX: 65-6215 6904
A DBA/DIVISION OF World Fuel Services (Singapore) Pte Ltd.
Registration Number: 199501485M

| Exchange Rate: 1.2139 AUS/USD | Total Invoice: AUD 228,412.41 | TOTAL DUE USD $188,165.66 |
|---|---|---|
| Total Net: AUD 228,412.41 | GST (10%): 0.00 | PLEASE REMIT THIS AMOUNT |

**TRANS-TEC**

A DBA/Division of WORLD FUEL SERVICES (SINGAPORE) PTE LTD
238A THOMSON ROAD # T - 03 NOVENA SQUARE TOWER A
SINGAPORE 307684 GST No: M2-8920852-6
GST# 92 885 230 620

HIJAZI & GHOSHEH CO.
P.O. BOX 18392
MARKA/ AL MARAAI ROAD
AMMAN 11118
JORDAN

## TAX INVOICE

| CUSTOMER NO. | INVOICE NO. | INVOICE DATE | PAGE NO. |
|---|---|---|---|
| 51342 | 174715-531 | 20-AUG-07 | 1 - 1 |

Tel: 65-6215-6999 Fax: 65-6215-6902
Internet: http://www.wfscorp.com
**WIRE TRANSFER FUNDS TO:**
La Salle Bank N.A. Chicago, IL
ABA: 071000505
SWIFT: LASLUS44
ACCT: TRANS-TEC
ACCT# 5800259169
ALL BANK CHARGES ARE FOR SENDER'S ACCOUNT

| LIFT DATE | BDR.NO. | ORDER NO. | CONTRACT NO. | POI NO. | TERMS |
|---|---|---|---|---|---|
| 20-AUG-07 | N/A | N/A | NA | 2269763 | 45 DDD BY TT |
| VESSEL | PORT | COUNTRY | DESTINATION | ITEM NO. | DUE DATE |
| BADER III | FREMANTLE, AUSTRALIA | AUSTRALIA | N/A | NA | 04-OCT-07 |

| DESCRIPTION | QUANTITY | UNIT PRICE | EXTENDED AMOUNT | | SALES TAX AMOUNT | | INVOICE AMOUNT |
|---|---|---|---|---|---|---|---|
| | | | AUD | USD | AUD | USD | USD |
| | 1 USG | 5,895.86000 USD/USG | 7,308.51 | 5,895.86 | 0.00 | 0.00 | 5,895.86 |
| Received: USD 188,165.66 on 17-AUG-07 We charged your account for 47 days @ 2.00% (01-JUL-07 to 17-AUG-07) per month pro rata | | | 7,308.51 | 5,895.86 | 0.00 | 0.00 | 5,895.86 |

INVOICE SUMMARY:
AMOUNT NOT SUBJECT TO SALES TAX ........ 7,308.51 / 5,895.86
AMOUNT SUBJECT TO SALES TAX ............ 0.00 / 0.00
TOTAL EXCLUSIVE OF SALES TAX ........... 7,308.51 / 5,895.86
TOTAL SALES TAX ........................ 0.00 / 0.00
INVOICE TOTAL .......................... 7,308.51 / 5,895.86

This transaction is subject to the terms and conditions of sale set forth at http://www.wfscorp.com/docs/gtc-marine.pdf
WE WILL ASSUME THIS INVOICE TO BE CORRECT UNLESS WE RECEIVE WRITTEN NOTICE FROM YOU WITHIN 14 DAYS FROM THE INVOICE DATE.
A CHARGE OF 2% PER MONTH PRO RATA WILL BE APPLIED ON AMOUNTS PAST DUE.

| MAIL INSTRUCTIONS | EXCHANGE RATE | COUNTRY SEQUENCE NO. | CUSTOMER REFERENCE NO. | PLEASE REMIT THIS AMOUNT |
|---|---|---|---|---|
| REGULAR MAIL | 1.2396 AUD/USD | | N/A | USD 5,895.86 |

## THE WORLD FUEL SERVICES CORPORATION MARINE GROUP OF COMPANIES

## GENERAL TERMS AND CONDITIONS

Effective January 1, 2004, the following terms of sale and supply shall constitute the General Terms and Conditions ("General Terms") of the World Fuel Services Corporation Marine Group of companies (collectively, "World Fuel Services") headquartered at 9800 N.W. 41st Street, Suite 400, Miami, Florida 33178, which includes, but is not limited to, World Fuel Services Americas, Inc. ("WFSAMER"), World Fuel Services Europe, Ltd. ("WFSEUR"), and World Fuel Services (Singapore) Pte. Ltd. ("WFSASIA"), and their respective subsidiaries and/or affiliates and/or branch offices.

WFSAMER, WFSEUR and WFSASIA each do business in its name, respectively, and under the names or brand names of its subsidiaries, affiliates, and branch offices, respectively, including, but not limited to: Trans-Tec International S.R.L.; Casa Petro S.A.; Pacific Horizon Petroleum Services, Inc.; Trans-Tec Services (UK) Ltd.; Trans-Tec Services (UK) Ltd. – Denmark Branch; World Fuel Services (Singapore) Pte. Ltd. - South Africa Branch; Bunkerfuels UK Limited; World Fuel Services (Singapore) Pte. Ltd. - Bunkerfuels Hellas – Greek Branch; Oil Shipping (Bunkering) B.V.; Norse Bunkers AS; World Fuel Services (Singapore) Pte. Ltd. – Korea Branch; Trans-Tec Services (Japan) Co., K.K.; Oil Shipping (Hong Kong) Ltd.; Marine Energy Arabia Establishment Ltd.; Marine Energy Arabia Co., L.L.C.; and World Fuel Services European Holding Company I, Ltd.

Unless otherwise agreed in writing, the General Terms shall apply to every sale of marine petroleum products ("Products") entered into between any World Fuel Services entity as seller ("Seller"), and any buyer ("Buyer") of such Products.

1.    **INCORPORATION AND MERGER:** Each sale of Products shall be confirmed by telex, fax or other writing from the Seller to the Buyer ("Confirmation"). The Confirmation shall incorporate the General Terms by reference so that the General Terms thereby supplement and are made part of the particular terms set forth in the Confirmation. The Confirmation and the General Terms shall together constitute the complete and exclusive agreement governing the transaction in question (the "Transaction"). No other prior agreements or understandings, whether verbal or written, shall apply unless specifically referenced in the Confirmation. In the event of an inconsistency between the particular terms of the Confirmation and the General Terms, the Confirmation shall control for the purpose of that particular Transaction with the exception of Sections 8 and 17 below, which can only be modified by a mutually signed writing between Buyer and Seller.

2.    **PRICES:** The price to be paid for Products sold in each Transaction shall be as agreed between the Buyer and Seller in the Confirmation. Unless otherwise specified, the quoted price term shall be ex-wharf and shall represent only the purchase price of the Products. If the price term is quoted as "delivered", then in addition to the purchase price of the Products, the price shall include only the cost of transportation. The Buyer shall pay any additional expenses or costs such as barging, demurrage,

625201-2

EXHIBIT B

wharfage, port dues, duties, taxes, fees and any other costs including, without limitation, those imposed by governmental authorities.

3. **QUALITY:** Unless otherwise specified in the Confirmation, the Products shall be of the quality generally offered by the Seller at the time and place of delivery, for the particular grade or grades ordered by the Buyer. Buyer shall have the sole responsibility for the selection of proper Products for use in the vessel being supplied ("Receiving Vessel") or other receiving facility. **ANY IMPLIED CONDITIONS AND WARRANTIES, INCLUDING THE WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, ARE EXPRESSLY EXCLUDED AND DISCLAIMED.**

4. **QUANTITY:** The quantity of Products sold in each Transaction shall be as agreed between the Buyer and the Seller as per the Confirmation. Notwithstanding acceptance of the Buyer's order, the Seller's obligation to supply such quantities shall be subject to availability of Products from the Seller's source of supply at the time and place delivery is requested.

5. **TITLE:** Delivery shall be deemed completed and title and risk of loss shall pass to the Buyer when the Marine Fuel reaches Physical Supplier's end of the delivery hose or pipeline connecting Physical Supplier's delivery facilities to the Receiving Vessel's receiving facilities, or in the event that Buyer has arranged its own transportation, the receiving facilities of the barge or coastal tanker nominated by Buyer. The Buyer shall be responsible for connection to the permanent intake of the Receiving Vessel, or the barge or coastal tanker nominated, and pumping shall be performed under the direction and responsibility of the Buyer.

6. **MEASUREMENT, TESTING, CLAIMS:**

   (a) The quantity of product delivered shall be determined from the official gauge or meter of the bunkering barge or tank truck effecting delivery or of the shore-tank in case of delivery ex-wharf. Such determination shall be conclusive.

   (b) With respect to the quality of the Products supplied, a sample(s) shall be drawn at the time of pumping in accordance with the customary method at the port of supply. The sample(s) shall be conclusively deemed to be representative of the quality of the Products supplied to the Receiving Vessel. In the event of a claim by the Buyer, the sample(s) shall be tested and analyzed by an independent surveyor whose results shall be conclusive and binding on both Buyer and Seller. The independent surveyor shall be appointed by mutual agreement, and the surveyor's fee shall be shared equally by the Buyer and Seller. In the event that Seller proposes an independent inspector and Buyer takes no action to either accept this proposal or to suggest an alternative inspector, then Seller's choice of inspector shall be binding and any tests performed by such

inspector's lab shall be similarly binding, regardless of whether or not Buyer chooses to send a representative to such testing.

(c)   Any samples drawn from the Receiving Vessel's tanks shall not be valid as an indicator of the quality supplied.

(d)   The Buyer waives any claim against the Seller with respect to the quantity or quality of the Products supplied unless the Buyer's claim is submitted to the Seller in writing within seven (7) days after the date of delivery of the Products. However, in the event that the physical supplier grants to Seller a period longer than seven (7) days in the supplier's own terms and conditions, then this same period will be extended from Seller to Buyer.

(e)   If Buyer submits a claim against the Seller with respect to the quantity or quality of the Products supplied, the Seller shall be entitled and the Buyer shall allow, or where the Buyer has chartered the vessel, shall obtain authorization from the Owner to allow, the Seller to board the Vessel and investigate the vessel's records and to make copies of documents which the Seller may consider necessary for its investigations.  Failure to allow boarding and/or to produce copies of documents shall constitute a waiver of the Buyer's claim.

(f)   It is the duty of the Buyer to take all reasonable actions to eliminate or minimize any damages or costs associated with any off-specification or suspected off-specification Products.  To this end Buyer shall cooperate with the Seller in achieving the most cost effective solution.  **IN ANY EVENT, SELLER'S LIABILITY HEREUNDER FOR ANY CLAIMS, WHETHER ARISING FROM QUALITY, QUANTITY, ACCIDENT, DELAY, SPILL OR OTHER CAUSE, SHALL NOT EXCEED THE PRICE OF THAT PORTION OF THE PRODUCT SOLD HEREUNDER ON WHICH LIABILITY IS ASSERTED. FURTHERMORE, NO LIABILITY WILL BORNE BY SELLER FOR (1) ANY DEMURRAGE OR OTHER VESSEL DELAY OR FOR INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES, INCLUDING, BUT NOT LIMITED TO, DAMAGES ARISING FROM THE EXERCISE OF SELLER'S RIGHT TO SUSPEND AND/OR TERMINATE DELIVERY OF PRODUCT, OR (2) ANY ACTS OR OMISSIONS OF AGENTS AND/OR SUBCONTRACTORS OF SELLER, INCLUDING, WITHOUT LIMITATION, FUEL TRANSPORTERS OR FUELING AGENTS.**

7.   **PAYMENT:**

(a)   Unless otherwise provided in the Confirmation, all sales shall be on a cash in advance or irrevocable letter of credit basis.  All letters of credit procured by Buyer in favor of Seller shall be in a form and substance acceptable to Seller and issued only by a bank acceptable to Seller.

-3-

(b)    Any individual bunker transaction not requiring cash in advance shall require credit approval by Seller's Credit Department in Miami, Florida. This approval, which will occur prior to Seller's transmittal to Buyer of a Confirmation, shall be construed as the binding act in a bunker transaction and it is agreed that contract formation has occurred in Florida. If payment of cash in advance is not required, the Buyer shall make payment in full on or before the due date set forth in the invoice, in immediately available U.S. dollars and in such manner as the Seller may designate in the invoice, without discount, set-off, or deduction. Invoices may be sent via fax, telex, e-mail or any other means permitted by law. Notwithstanding any disputes regarding quality, quantity, or other matter, the Buyer must initially pay the full amount due, and any disputes shall be resolved between the Buyer and the Seller after such payment has been made.

(c)    Past due amounts shall accrue interest at a rate equal to the lesser of 2.0 percent per month, or the maximum rate permitted by applicable law. All amounts more than 15 days past due shall incur an additional 5% administrative fee. All payments received from Buyer after an invoice is overdue shall first be applied to interest, legal collection costs and administrative fees incurred before they will be applied to the principal amounts on a subsequent delivery. Buyer may not designate application of funds to a newer invoice so long as there are any unpaid charges, interest, collection costs or administrative fees on a previous one. This shall not be construed, however, as preventing Seller's option to choose application of funds in instances where subsection (h) below shall apply. Any waiver by Seller of interest charges or administrative fees on a particular invoice shall not be construed as a waiver by Seller of its right to impose such charges on subsequent deliveries.

(d)    If the payment due date falls on a weekend or any bank holiday in the country where payment is to be remitted (other than a Monday), payment must be made on the first prior available banking day. If the payment due date falls on a Monday bank holiday, payment may be made on the next available banking day.

(e)    The Buyer and the Seller are responsible for their respective banking charges.

(f)    The Buyer agrees to pay, in addition to other charges contained herein, internal and external attorneys fees on a full indemnity basis for the Seller's collection of any non-payment or underpayment as well as any other charges incurred by the Seller in such collection including, but not limited to, the cost of bonds, fees, internal and external attorneys fees associated with enforcing a maritime lien, attachment or other available right, whether in law, equity or otherwise.

(g)    All unpaid invoices from Seller to Buyer shall immediately be considered overdue, upon the occurrence of any of the following events: (i) any invoice of Seller to Buyer is seven (7) days overdue; (ii) any vessel owned or operated by

-4-

Buyer is arrested or attached by Seller or a third party for unpaid debts; or (iii) there is a change in the financial circumstances or structural organization of Buyer sufficient to cause Seller to reasonably believe that its likelihood of receiving payment from the Buyer is jeopardized or that its security interest in any of Buyer's owned or operated vessels is jeopardized.

(h)    In the event that more than one invoice is past due at the same time, Seller shall be entitled, at its sole discretion, to specify the particular invoice to which any subsequent payments shall be applied.

(i)    Seller reserves the right, in addition to all other rights and remedies available to it under applicable law, in equity, or otherwise, to suspend further deliveries of Product, and demand payment of all outstanding balances, if the outstanding balances due from Buyer (including estimates of unbilled sales) exceed the Buyer's applicable credit limit, or if Buyer fails to make any payment as herein provided or otherwise defaults under the General Terms.

8.    **CREDIT AND SECURITY:**

(a)    Products supplied in each Transaction are sold and effected on the credit of the Receiving Vessel, as well as on the promise of the Buyer to pay therefor, and it is agreed and the Buyer warrants that the Seller will have and may assert a maritime lien against the Receiving Vessel for the amount due for the Products delivered. This maritime lien shall extend to the vessel's freight payments for that particular voyage during which the bunkers were supplied and to freights on all subsequent voyages.

(b)    In the event of a breach of the warranty set forth in sub-paragraph (a) above before delivery, the Seller shall be entitled to terminate the Transaction. Further, the Seller reserves the right to impose a cancellation fee in the amount set forth in Section 10 below.

(c)    If the purchase of Products is contracted for by an agent, then such agent, as well as the principal, shall be bound by and be fully liable for obligations of the Buyer in the Transaction, whether such principal be disclosed or undisclosed.

(d)    Buyer acknowledges that Seller has relied on vessel ownership listings provided in Lloyd's Register of International Shipowning Groups (Lloyd's Register – Fairplay Ltd.) and/or Fairplay World Shipping Directory (Fairplay Publications Ltd.) and/or www.seasearcher.com and/or any other available resource to establish and/or confirm same. If Buyer is listed or otherwise indicated as the registered, beneficial or group fleet owner of any vessel listed in Lloyd's, Buyer warrants and agrees that all other vessels listed in the same beneficial ownership shall be construed as true sisterships in the same beneficial ownership.

(e)    All sales made under these terms and conditions are made to the registered owner of the vessel, in addition to any other parties that may be listed as Buyer in the confirmation. Any bunkers ordered by an agent, management company, charterer, broker or any other party are ordered on behalf of the registered owner and the registered owner is liable as a principal for payment of the bunker invoice.

9.    **DELIVERIES:**

(a)    The Buyer shall give the Seller's local representative at the port of supply at least 48 hours written notice of the scheduled time of delivery, excluding Sundays and holidays.

(b)    In the event that delivery is desired outside normal working hours and is permitted by port regulations, the Buyer shall pay all overtime and additional expenses incurred in connection therewith.

(c)    The Buyer shall make all connections and disconnections of the delivery hose to the Receiving Vessel or barge or coastal tanker nominated on behalf of the Buyer and shall render all other necessary assistance and equipment to promptly receive the Products.

(d)    Seller shall use due diligence in the timely delivery of Product to Buyer's vessels. However, unless specifically guaranteed in writing in Seller's Confirmation, Seller does not warrant the availability of barges or the timeliness of delivery. Any costs of delay to Buyer's vessels as a result of late delivery shall be borne by Buyer, unless Seller guaranteed timeliness of delivery in writing, in which case Seller will reimburse Buyer for extra port costs such as shifting, pilotage and berthing. Seller will not be liable for costs of ship's demurrage, off-charterhire or for indirect, special, incidental other consequential damages.

(e)    If the actual delivery date is later than the contracted date stated in the Confirmation, the price may be subject to price fluctuations up to time of delivery, at the Seller's discretion. If the Receiving Vessel shall not have arrived within five (5) days after the expected date of arrival, the Seller shall have the right, at its sole discretion, to cancel the Transaction without prejudice to any other rights the Seller may have.

(f)    The Seller shall be at liberty to make arrangements with other companies ("Suppliers") to supply the whole or any part of the Products sold in each Transaction.

(g)    The Buyer shall be responsible for all demurrage or additional expenses incurred by the Seller if the Buyer, its vessel or its port agent causes delay to

-6-

the barge, truck or delivery facilities. The Buyer shall also pay any charges for mooring, unmooring and port dues, if incurred. In addition, the Buyer shall be liable for any expenses incurred by the Seller resulting from the Buyer's failure to accept the full quantity of Products ordered by the Buyer.

10.  **CANCELLATION CLAUSE:**  If subsequent to the Confirmation, the Buyer cancels the order for any reason whatsoever, the Seller without prejudice to any other rights it may have, shall be entitled to impose cancellation fees in the amount of ten (10) percent of the total order amount, or a minimum fee of US$ 5,000.00.

11.  **INDEMNITY:**  The Buyer shall defend, indemnify and hold the Seller harmless with respect to any and all liability, loss, claims, expenses, or damage the Seller may suffer or incur by reason of, or in any way connected with, the acts, omissions, fault or default of the Buyer or its agents in the purchase, receipt, use, storage, handling or transportation of the Products in connection with each Transaction.

12.  **CONTINGENCIES:**

(a)  The Seller shall not be in breach of its obligations under any Transaction in the event that performance is prevented, delayed, or made substantially more expensive as a result of any one or more of the following contingencies, whether or not such contingency may have been foreseen or foreseeable at the time of contracting and regardless of whether such contingency is direct or indirect:

(i)  labor disturbance, whether involving the employees of the Seller, Supplier or otherwise, and regardless of whether the disturbance could be settled by acceding to the demands of the labor group;

(ii)  compliance with a change, request or order of any governmental authority or agent;

(iii)  shortage in raw material, transportation, manufacturing, or fuels from the Seller's contemplated source of supply, not shown by the Buyer to be due to the Seller's lack of diligence; or

(iv)  any cause beyond the reasonable control of the Seller, whether or not foreseeable.

(b)  In the event that performance is prevented or delayed by such a contingency, the Seller may reduce deliveries in any manner as it may determine in its sole discretion.

(c)  If performance is made substantially more expensive by such a contingency, the Seller shall have the option either to reduce or stop deliveries or to continue

-7-

deliveries and increase prices in fair proportion to the increased cost of operation under such a contingency.

(d)    The Seller shall not be liable for demurrage or delay resulting from such a contingency.

(e)    Quantities not sold or purchased due to the occurrence of such a contingency may be reduced or eliminated from the contractual amount at the discretion of the Seller.

(f)    Nothing in this provision shall be deemed to excuse the Buyer from its obligation to make payments for Products received.

13.    **TAXES AND ASSESSMENTS:**

(a)    The Buyer will pay the Seller the amount of all excise, gross receipts, import, motor fuel, superfund and spill taxes, and all other federal, state and local taxes (collectively, "Taxes and Assessments") or the foreign equivalent as determined in the sole, absolute and unfettered discretion of Seller of such Taxes and Assessments, however designated, other than taxes on income, paid or incurred by the Seller directly or indirectly with respect to the Products and/or on the value thereof insofar as the same are not expressly included in the price quoted. Any additional Taxes and Assessments incurred by Seller arising from a Transaction and imposed by any governmental and/or any regulatory authority as a result of an audit, whether domestic and/or international, shall be borne solely by Buyer.

(b)    The Buyer will present the Seller with any required documentation, including but not limited to registrations, exemptions, certifications, claims, refunds, declarations or otherwise, in a form and format, and on or before whatever due date the Seller shall require, to satisfy the Seller's concerns in connection with any of the above taxes or assessments. Further, the Buyer shall indemnify and hold the Seller harmless for any damages, claims, liability or expense the Seller might incur due to the Buyer's failure to comply with this requirement.

14.    **SAFETY AND ENVIRONMENTAL PROTECTION:**

(a)    It shall be the sole responsibility of the Buyer to comply and advise its personnel, agents and/or customers to comply, both during and after delivery, with all the health and safety requirements applicable to the Products and to ensure so far as possible that any user of such Products avoids without limitation any frequent or prolonged skin contact with the Products. The Seller accepts no responsibility for any consequences arising from failure to comply with such health and safety requirements or arising from such contact. The

625201-2

Buyer shall protect, indemnify and hold the Seller harmless against any damages, expense, claims or liability incurred as a result of the Buyer, or any user of the Products, or its customers failing to comply with the relevant health and safety requirements.

(b)    In the event of a spill or discharge occurring before, during or after bunkering, the Buyer shall immediately notify the appropriate governmental authorities and take whatever action is necessary, and pay all costs to effect the clean-up. Failing prompt action, the Buyer authorizes the Seller and Supplier to conduct such clean-up on behalf of the Buyer at the Buyer's risk and expense, and the Buyer shall indemnify and hold the Seller and Supplier harmless against any damages, expense, claims or liability arising out of any such spill or clean-up unless such spill or clean-up shall be proven to be wholly caused by Seller's negligence.

(c)    The Buyer warrants that the Receiving Vessel is in compliance with all governmental trading and pollution regulations. The Receiving Vessel will not be moored at a wharf or alongside other marine loading facilities of the Seller or Supplier unless free of all conditions, deficiencies or defects which might impose hazards in connection with the mooring, unmooring or bunkering of the Receiving Vessel.

15.    **ADDITIONAL PROVISIONS:**

(a)    Claims, notices and other communications hereunder shall be in writing and shall be mailed via certified or registered mail or by overnight courier to the attention of the particular Seller in each Transaction at the following address: 9800 N.W. 41st Street, Suite 400, Miami, Florida 33178. Unless otherwise indicated by the Buyer, notices hereunder shall be mailed, faxed and/or e-mailed to the Buyer at the address designated by the Buyer for invoicing. Either the Buyer or the Seller may by notice to the other change the address, telex or facsimile number or electronic messaging system details at which notices or other communications are to be given to it by giving fifteen (15) days prior written notice of its new address to the other party.

(b)    No waiver of any of the provisions of this Agreement shall be effective unless it is in writing and signed by the party against whom it is asserted, and any such waiver shall only be applicable to the specific instance to which it relates and shall not be deemed to be a continuing or future waiver of any breach.

(c)    A failure or delay in exercising any right, power or privilege in respect of the General Terms and Conditions will not be presumed to operate as a waiver, and a single or partial exercise of any right, power or privilege will not be

-9-

presumed to preclude any subsequent or further exercise, of that right, power or privilege or the exercise of any other right, power or privilege.

(d)    The Buyer shall not assign any right or delegate any obligation arising under a Transaction without the prior written consent of the Seller.

(e)    If any part of the General Terms is deemed invalid, all other conditions and provisions hereof shall remain in full force as if the invalid portion had never been part of the original agreement.

(f)    The headings used herein are for convenience of reference only and are not to affect the construction of or to be taken into consideration in interpreting the General Terms and Conditions.

(g)    Neither the General Terms, nor any Confirmation, shall be altered or amended except by an instrument in writing signed by or on behalf of the Seller. Seller may amend the General Terms from time to time without notice to Buyer. Any such amendment shall be effective and apply with respect to all Transactions for which a Confirmation is sent after the effective date of the altered or amended General Terms.

(h)    No ambiguity in any provision of the General Terms or any Confirmation shall be construed against a party by reason of the fact it was drafted by such party or its counsel. Acceptance of, or acquiescence in, a course of performance rendered under the General Terms or any Confirmation shall not be relevant or admissible to determine the meaning of the General Terms or any Confirmation, even though the accepting or acquiescing party has knowledge of the nature of the performance and an opportunity to make objection. The General Terms shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, executors, legal representatives, and successors.

16.    **WAIVER OF IMMUNITIES:** Buyer expressly and irrevocably waives and agrees not to assert such a defense in any action or proceeding, which may be commenced or asserted against the Buyer or Buyer's revenues and/or assets in connection with a Transaction to the fullest extent permitted by applicable law, with respect to Buyer and Buyer's revenues and/or assets (irrespective of their use or intended use), all immunity on the grounds of sovereign immunity or other similar grounds, where Buyer is a State or Government owned or controlled entity, whether in whole or in part or otherwise, which status would otherwise entitle the Buyer to assert or allege the defense of sovereign immunity in any claim against it from:

(a)    Suit;

(b)    Jurisdiction of any court;

(c)   Relief by way of injunction, order for specific performance or for recovery of property;

(d)   Attachment of Buyer's assets (whether before or after judgment); and

(e)   Execution or enforcement of any judgment to which Buyer or Buyer's revenues and/or assets might otherwise be entitled in any proceedings in the courts of any jurisdiction and irrevocably agrees, to the extent permitted by applicable law, that it will not claim any such immunity in any proceedings.

17.   **LAW AND JURISDICTION:**   The General Terms and each Transaction shall be governed by the laws of the United States and the State of Florida, without reference to any conflict of laws rules which may result in the application of the laws of another jurisdiction. The laws of the United States shall apply with respect to the existence of a maritime lien, regardless of the country in which Seller takes legal action. Any disputes concerning quality or quantity shall only be resolved in a court of competent jurisdiction in Florida. Disputes over payment and collection may be resolved, at Seller's option, in the Florida courts or in the courts of any jurisdiction where either the Receiving Vessel or an asset of the Buyer may be found. Each of the parties hereby irrevocably submits to the jurisdiction of any such court, and irrevocably waives, to the fullest extent it may effectively do so, the defense of an inconvenient forum or its foreign equivalent to the maintenance of any action in any such court. Seller shall be entitled to assert its rights of lien or attachment or other rights, whether in law, in equity or otherwise, in any country where it finds the vessel. **BUYER AND SELLER WAIVE ANY RIGHT EITHER OF THEM MIGHT HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING FROM OR RELATED TO THE GENERAL TERMS OR ANY TRANSACTION.**

THE WORLD FUEL SERVICES CORPORATION
MARINE GROUP OF COMPANIES
GENERAL TERMS AND CONDITIONS

-11-

625201-2

June 23, 2009

**To Whom It May Concern:**

Reference is made to invoices numbered 130288-596 and 133084-596 issued by World Fuel Services Europe, Ltd. trading as Trans-Tec ("WFSEUR") to Hijazi & Gosheh Co. ("H&G") and to other contractual amounts owed, even though not invoiced, related to the supplies of bunkers indicated on the invoices referenced above, including without limitation the applicable administrative fees and legal and any court costs incurred or to be incurred in the collection of such amounts owed by H&G to WFSEUR. For value and other good and valuable consideration, receipt of which is hereby acknowledged, WFSEUR hereby agrees to assign any and all of its rights at law, in equity or otherwise, as against H&G and the recovery of amounts owing to WFSEUR by H&G as described herein to World Fuel Services (Singapore) Pte. Ltd. ("WFSSING") and WFSSING hereby agrees to accept such assignment.

As of June 23, 2009, the total amount owed to WFSEUR by H&G, excluding legal fees and court costs and any other costs of collection regarding the outstanding amounts, the right to recover same being expressly reserved, is in the amount of USD 80,819.00.

The issuance of this assignment by WFSEUR to WFSSING is not to be interpreted as an intent by WFSEUR to waive or forgo any rights it may have at law, in equity or otherwise, including without limitation any maritime or other lien rights for the supply of bunkers or lubricants and such rights continue in effect and are retained and inure expressly to the benefit of WFSSING until the entities and/or persons liable for any such debt giving rise to the granting of this Assignment have settled the debt with WFSSING. Such rights are expressly reserved.

**WORLD FUEL SERVICES EUROPE, LTD.**

By: _____

Name: MICHAEL S. CLEMENTI

Title:  Director
Date:  June 23, 2009

**WORLD FUEL SERVICES (SINGAPORE) PTE. LTD.**

By: _____

Name: STEVEN A. SCAPPETUORO

Title:  Director
Date:  June 23, 2009

1 of 1

EXHIBIT C

## VERIFICATION

STATE OF NEW YORK )
                  )  ss.:
COUNTY OF NEW YORK )

George N. Proios being duly sworn, deposes and says:

1.    I am a member of the bar of this Honorable Court and of the Law Offices of George N. Proios, PLLC, attorneys for Plaintiff.

2.    I have read the foregoing Verified Complaint and I believe the contents thereof are true.

3.    The reason this Verification is made by deponent and not by Plaintiff in that Plaintiff is foreign corporation, no officers or directors of which are within this jurisdiction.

4.    The sources of my information and belief are documents provided to me and statements made to me by representatives of Plaintiff.

_____
George N. Proios

Sworn to before me this
29th day of September, 2009

_____
        Notary Public

**JON WERNER**
NOTARY PUBLIC
02WE6149122
STATE OF NEW YORK
COMMISSION EXPIRES
JULY 3RD, 20_10_

-9-